668 So.2d 287 (1996)
ATLANTA CASUALTY COMPANY, Appellant,
v.
Shirley T. EVANS (formerly Brinson), individually and as Guardian of Charlesie Bennett, Gladys Willis, and Leasha Willis, Appellees.
No. 95-1080.
District Court of Appeal of Florida, First District.
February 20, 1996.
*288 John H. Foote of Granger, Santry, Mitchell & Heath, P.A., Tallahassee, for Appellant.
Fred H. Flowers, Tallahassee, for Appellees.
WEBSTER, Judge.
Appellant seeks review of an adverse final judgment entered in a declaratory judgment action brought by appellee to determine whether, at the time of an auto accident in which appellee and her children were injured, the policy previously issued to her by appellant afforded uninsured motorist coverage. Because we conclude that the trial court incorrectly determined that, at the time of the accident, "there was not in existence a currently valid written rejection of [uninsured motorist] coverage on behalf of [appellee] or her children"; and that, as a result, appellee and her children were entitled to uninsured motorist coverage; we reverse.
The facts relevant to this appeal are not in dispute. As of February 19, 1990, appellee and Larry Brinson had been married to each other for some four years. On that date, Mr. Brinson signed an application seeking auto insurance from appellant. The application listed both Mr. Brinson and appellee (who was then also named Brinson) as applicants. It requested bodily injury liability limits of $10,000.00 per person and $20,000.00 per accident, and a property damage liability limit of $10,000.00 per accident. Mr. Brinson also signed a form rejecting uninsured motorist coverage. That form appears to meet all statutory requirements, including that mandating that "[t]he heading of the form ... be in 12-point bold type and ... state: `You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully.' " § 627.727(1), Fla.Stat. (1991) (providing that, if such a "form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds"). In response to the application, appellant issued policy number 01700516, covering the period from February 20, 1990, to February 20, 1991. That policy included the requested bodily injury and property damage liability limits, and provided no uninsured motorist coverage.
On December 3, 1990, Mr. Brinson and appellee were divorced. Approximately one month before the February 20, 1991, policy expiration date, appellant sent a renewal notice to the address which had been provided on the application, which appears to have been the address at which appellee continued to reside after the divorce. On February 20, 1991, appellee did, in fact, renew policy number 01700516. She also signed a "Florida Endorsement Request," asking for the "same coverage," but requesting that her former husband, Mr. Brinson, be deleted as a named insured and that her last name be changed on the policy from Brinson to Evans. Appellant made the requested changes, and issued endorsements to that effect. However, prior to issuing the renewal, appellant did not offer appellee uninsured motorist coverage; nor did it obtain from appellee a written rejection of such coverage. On July 7, 1991, while the renewal policy was in effect, appellee and her minor children were injured in an auto accident in which an uninsured motorist was at fault.
The dispositive issue in the case is whether appellant was obliged to offer appellee uninsured motorist coverage, and to obtain a written rejection from her, before it could issue the February 1991 renewal policy without uninsured motorist coverage. To resolve this issue, we look to section 627.727(1), Florida *289 Statutes (1991), which, to the extent relevant, reads:
No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.... Unless an insured ... requests such coverage ... in writing, the coverage ... need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits when an insured... had rejected the coverage.

(Emphasis added.) We find this language to be relatively clear in its intentan insurer is not required to provide uninsured motorist coverage when "an insured named in the policy" rejects such coverage, in writing, "on behalf of all insureds under the policy." Moreover, uninsured motorist coverage need not be provided when "an existing policy" as to which uninsured motorist coverage had been rejected is "renew[ed], extend[ed], change[d], supersede[d], or replace[d]" by "any other policy" having "the same bodily injury liability limits" as the previous policy, "[u]nless an insured ... requests such coverage... in writing."
In the absence of ambiguity, there is no need to resort to rules of construction. The words of a statute must be given their plain and ordinary meanings. E.g., Streeter v. Sullivan, 509 So.2d 268 (Fla.1987); A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157 (1931). Courts are "without power to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power." American Bankers Life Assurance Co. of Florida v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968).
The facts of this case, read in light of section 627.727(1), establish the following. The rejection of uninsured motorist coverage was signed by Mr. Brinson, "an insured named in the policy," on February 19, 1990, "on behalf of all insureds under the policy." In February 1991, the previously issued policy was "renew[ed]" and "change[d]." The renewal policy had "the same bodily injury liability limits" as did the previous policy. Therefore, according to the plain language of the statute, appellant was not obliged to offer uninsured motorist coverage to appellee absent a written request by appellee for such coverage. Because it is undisputed that no such request was made, the plain language of the statute mandates that judgment should have been entered in favor of appellant, rather than of appellee.
While concededly dicta, language in American Fire & Indemnity Co. v. Spaulding, 442 So.2d 206 (Fla.1983), appears to support our conclusions that section 627.727(1) should be read as written and that, as a result, appellee and her children are not entitled to uninsured motorist benefits. In Spaulding, the district court of appeal had interpreted section 627.727(1), Florida Statutes (1977), as requiring an insurer to offer uninsured motorist coverage to an insured every time there was a "material" endorsement (change) to the policy, because such a change amounted to the issuance of a new, separate, policy. The supreme court rejected such a construction. In a footnote, it said:
We note that the legislature amended § 627.727(1) in ch. 82-386, §§ 66 [sic], Laws of Fla. (1982), thereby eliminating any possibility that this section will again be interpreted as requiring an offer of uninsured motorist coverage with every "material" policy change. § 627.727(1) (Supp.1982) now reads in pertinent part:
[T]he [uninsured motorist] coverage need not be provided in or supplemental *290 to any other policy which renews, extends, changes, supersedes, or replaces an existing policy issued to him by the same insurer, when the named insured or lessee has rejected the coverage in connection with a policy previously issued to him by the same insurer.
. . . .
Id. at 208 n. 4. While this portion of section 627.727(1) has since been amended in some respects, those amendments do not appear significant for purposes of this analysis. Clearly, the supreme court was of the opinion that the 1982 amendments to section 627.727(1) would preclude in the future an interpretation of that section as requiring that uninsured motorist coverage again be offered to an insured, notwithstanding her previous rejection of such coverage, merely because of an intervening change in the policy, "material" or otherwise. Equally clearly, that is precisely the interpretation which appellee now urges us to place upon that section.
We reverse the declaratory judgment entered by the trial court, and remand with directions that the trial court vacate that judgment and enter judgment in favor of appellant.
REVERSED and REMANDED, with directions.
ERVIN and LAWRENCE, JJ., concur.