# SIXTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 6D2023-1429
Lower Tribunal No. 2019-CA-003835-O

_____

PROGRESSIVE SELECT INSURANCE COMPANY,

Appellant,

v.

CINDY DUNKEL,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Vincent S. Chiu, Judge.

September 20, 2024

WOZNIAK, J.

Progressive Select Insurance Company appeals the summary final judgment rendered in favor of its insured, Cindy Dunkel née Browning ("Cindy"), in her declaratory judgment action concerning whether she was entitled to uninsured motorist coverage.[1]  Progressive argues that the trial court erred in concluding that Progressive was required to offer Cindy uninsured motorist ("UM") coverage and

---

[1] This case was transferred from the Fifth District Court of Appeal to this Court on January 1, 2023.

obtain her written rejection of such coverage at the time she was added to her new husband's existing policy and that its failure to do so resulted in coverage for Cindy. We agree and reverse.

Background

In June 2011, Kenneth Dunkel, a single man, applied to Progressive for insurance coverage for his vehicles. Cindy Browning was listed on the application as a "rated driver" because she lived at the same address. As a rated driver, Cindy had rights to the bodily injury benefits under the policy. Under the title "Relationship" on the application, Kenneth was identified as "Insured" and Cindy was identified as "Other." Progressive uses "Other" to refer to someone unrelated to the applicant by blood or marriage. Kenneth subsequently signed the Florida Uninsured Motorist Coverage Selection/Rejection Form, choosing to "reject all Uninsured Motorist coverage." Directly above his handwritten signature, the form advised:

> I understand and agree that this selection of the option above applies to my liability insurance policy, <u>and will also apply to any renewals or replacements of such policy that are issued with the same Bodily Injury Liability limits as this policy.</u> If I decide to request a change to my selection, the change will not become effective until the Company receives your selection on this form and it has been completed and signed.

(Emphasis added).

In December 2012, Kenneth changed his marital status on the policy to "married" and added Cindy to his policy as a "named insured"; her relationship

2

status on the policy changed from "Other" to "Spouse" at that time. A Revised Renewal Declarations Page was issued shortly thereafter to reflect the changes. It shows both Kenneth and Cindy as "named insureds" and that UM coverage had been rejected. No premium was charged for UM coverage. Progressive did not send a new UM Selection/Rejection Form when Cindy became a named insured. Although Cindy could have requested a change in coverage once she became a named insured, she did not. Every Renewal Declarations Page that issued thereafter reflected both Kenneth and Cindy as named insureds and that UM coverage had been rejected.

In October 2015, Cindy was involved in a motor vehicle accident with an uninsured motorist. She gave Progressive timely notice of the accident and sought to recover under the UM portion of the policy. When Progressive determined there was no UM coverage, Cindy filed the underlying declaratory judgment suit. Progressive answered and raised the affirmative defense that a valid and enforceable rejection of UM coverage was in effect at the time of the accident, and thus Cindy was not entitled to UM coverage under the policy.

Both parties moved for summary judgment. Cindy's position was that once she became a "named insured" on the policy, Progressive was required to send her the UM Selection/Rejection Form. Progressive, on the other hand, argued that Kenneth's rejection of UM coverage carried forward to each renewal of the policy;

had Cindy wanted to change that decision, she would have had to contact Progressive, which she did not do.

The trial court denied Progressive's amended motion for summary judgment and granted Cindy's motion for summary judgment, reasoning that a new contract was created when Cindy's status changed to "named insured" and, thus, Progressive was required to send her the UM Selection/Rejection Form.

Analysis

We review a declaratory judgment involving statutory and contract interpretation de novo. *IconBrickell Condo. No. Three Ass'n v. New Media Consulting, LLC*, 310 So. 3d 477, 479 (Fla. 3d DCA 2020).

Progressive argues that the trial court erred in granting summary judgment in favor of Cindy because (1) under the applicable Florida statutes, Kenneth's rejection of UM coverage was binding on all insureds and persons making a claim under the policy, and (2) there was no change in the policy since its inception that would trigger the statutory requirement that the named insureds be sent a new UM Selection/Rejection Form.

To address Progressive's first argument, we turn to section 627.727, Florida Statutes (2015),[2] which requires all vehicle insurance policies that provide bodily

_____

[2] The version of section 627.727, Florida Statutes, in effect on the date of the operative renewal policy, June 22, 2015, i.e., the pre-July 2015 version, is the governing version here.

4

injury liability coverage to also include UM coverage, unless UM coverage is rejected by the named insured. Sections 627.727(1) and (9) detail the process for rejecting UM coverage and are controlling here.

Section 627.727(1) provides, subject to certain exceptions, that "[UM] coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy." If the named insured makes a written rejection of UM coverage, then "it will be conclusively presumed that there was an informed, knowing rejection of coverage . . . on behalf of all insureds." *Id.* A named insured's rejection of UM coverage applies to the policy in effect at the time of the rejection and extends to "any policy which renews, extends, changes, supersedes, or replaces an existing policy unless the named insured requests deletion of such limitations and pays the appropriate premium for such coverage." § 627.727(9), Fla. Stat.

The summary judgment evidence reflects that Progressive provided Kenneth with the Office of Insurance Regulation approved UM Selection/Rejection Form in 2011. Kenneth was the sole named insured on the policy at that time. His written rejection of UM coverage gave rise to a conclusive presumption that Kenneth made "an informed, knowing acceptance of such limitations on behalf of all insureds." § 627.727(9), Fla. Stat. The term "all insureds" is not restricted to only those identified in the policy at its inception. Rather, under section 627.727(9), Kenneth's

initial rejection of UM coverage applied "to any policy which renew[ed], extend[ed], change[d], supersede[d], or replace[d] [that] existing policy[.]"

The trial court, however, was persuaded by its understanding of *Chase v. Horace Mann Insurance Co.*, 158 So. 3d 514 (Fla. 2015). In *Chase*, at the inception of the policy, the father was the sole named insured and chose reduced UM coverage. 158 So. 3d at 515. His daughter was listed as a driver on that policy but was not a named insured. *Id.* Approximately three years later, the father was removed as the sole named insured and the daughter was made the sole named insured, with a new vehicle covered; the father obtained a new, separate policy for his own vehicle. *Id.* at 516. Because a new policy was issued to the father, the father was given the opportunity to reject or select lower UM coverage limits for his own policy, but because the daughter continued on the original policy, albeit in a new role, the insurer did not provide her with the opportunity to address UM coverage.

Eighteen months later, the father was removed from the daughter's policy as a listed driver, and eighteen months after that, the daughter changed the vehicle covered again. *Id.* Several months thereafter, the daughter added her father back onto her policy as a listed driver. A month later, the father was killed and the daughter was injured in an accident in the daughter's vehicle. The insurer refused to pay out UM benefits at the amount equal to the policy's bodily injury limits, relying on the father's original choice of reduced UM coverage. *Id.*

6

The supreme court held that when the daughter was named the sole insured on the policy, the policy became "a new policy for purposes of section 627.727(9), Florida Statutes (2008), because the only named insured on the policy has not previously been a named insured on the policy, and therefore has not had the opportunity to make any of the express waivers required by law." *Id.* at 517. Thus, even though the father had signed a waiver of full UM coverage on the same policy number, his waiver did not apply to the daughter once the father dropped from the policy and the daughter became the sole named insured on her policy. *Id.*

Progressive distinguishes *Chase* on the basis that here, Kenneth never dropped off the policy; he remained as a named insured throughout the life of the policy, unlike the father in *Chase*. In contrast, Cindy asserts that she, like the daughter in *Chase*, had no opportunity to choose UM coverage or the power to request a change to the initial rejection of that coverage when the policy was originally obtained. Progressive's point is well-taken.

While neither Cindy nor the daughter in *Chase* was given a UM selection/rejection form telling her of her right to UM coverage, the critical distinction in the two cases is the one identified by Progressive—that Kenneth remained on the policy and his prior rejection of UM coverage continued in effect even with the addition of Cindy as a named insured. Unlike in *Chase* where the daughter replaced her father on the policy as the sole named insured, which, in effect,

7

gave the insurer a new client, the amendment of the policy to add Cindy as a named insured did not result in her being the sole named insured. *Cf. Nationwide Mut. Fire Ins. Co. v. Hild*, 818 So. 2d 714, 716 (Fla. 2d DCA 2002) (concluding, where the plaintiff added his new wife and her car to his existing auto insurance policy but did not request any change in coverage, that new UM selection form was not required because the statutory language "clearly shows" that once insured properly rejects UM coverage in writing, the "plain language" of the statute "makes the insured's original selection of nonstacked UM coverage applicable to all renewals, extensions, and changes to an existing policy unless the insured specifically requests a change . . . and pays the additional premium"); *Metro. Prop. & Liab. Ins. Co. v. Gray*, 446 So. 2d 216, 220 (Fla. 5th DCA 1984) (holding "mere addition" of another person onto an existing policy, just like the addition of a vehicle, is not a reissuance of the whole policy); *Atlanta Cas. Co. v. Evans*, 668 So. 2d 287 (Fla. 1st DCA 1996) (holding insurer not obligated to offer UM coverage to former wife upon her renewal of policy post-divorce where, during marriage, former husband had rejected UM coverage on behalf of all insureds; ex-wife's removal of former husband from policy at renewal time and signing for the "same coverage" as on the earlier policy, where no change to bodily injury liability limits was made, did not require insurer to provide former wife with opportunity to change the UM selection). This also resolves Progressive's second argument. As it asserted, there was no change in the

8

policy since its inception that would trigger the statutory requirement that the named insureds be sent a new UM Selection/Rejection Form.

Because Cindy's becoming a named insured on the existing policy did not render the policy a "new" one, Progressive was not required to provide Cindy with a new UM Selection/Rejection Form when she joined Kenneth in the "named insured" category; Kenneth's original rejection of UM coverage was still in effect. *See* § 627.727(9), Fla. Stat. ("When the named insured . . . has initially accepted such limitations, such acceptance shall apply to any policy which renews, extends, changes, supersedes, or replaces an existing policy . . . ."). Thus, the trial court erred in entering summary judgment in favor of coverage.

We reverse and remand with instructions to enter summary judgment in favor of Progressive that Cindy is not entitled to UM coverage.

REVERSED and REMANDED with instructions.

STARGEL and SMITH, JJ., concur.

Kurt T. Koehler, of Cole, Scott & Kissane, P.A., Jacksonville, for Appellant.

Maegen Peek Luka, of Newsome Melton, P.A., Orlando, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED